UNITED STATES *v.* BROWN (No. 130). UNITED STATES *v.* KWONG TAI CHONG (No. 131). UNITED STATES *v.* QUONG YEE WO (No. 132).[1]

SHORTAGE OF BOTTLES PACKED IN CASES.
  Proof of discovery of shortage by an unofficial examination after packages have been discharged from vessel and after surrender of manual possession of the packages by customs officers is not sufficient by itself to support a claim that the goods have not been imported.

United States Court of Customs Appeals, October 12, 1911.

TRANSFERRED from United States Circuit Court for Southern District of New York, Abstract 21075 (T. D. 29700).

[Reversed.] .

*D. Frank Lloyd,* Assistant Attorney General (*Charles E. McNabb* on the brief), for the United States.
*Brown & Gerry* for the appellees.

Before MONTGOMERY, SMITH, BARBER, and DE VRIES, Judges.

SMITH, Judge, delivered the opinion of the court:

A consignment of Chinese wines put up in bottles and packed in cases was imported in December, 1907, and January, 1908, at the port of New York. After arrival a percentage of the cases was designated and retained for examination by the collector. The rest of the importation was turned over to the importers on their general bond, which provided that the packages delivered to them would be returned unopened to the collector on his order at any time within 10 days after report to him of the appraisal of the retained packages and that the bond should be forfeited if in the meantime any package thus subjected to the order of the collector should be opened without his consent or that of the surveyor in writing. The owners, after receipt of the merchandise, discovered that 7 of the original packages were short of the full number of 18 bottles which each case was supposed to contain. In the cases claimed to be short the number of bottles found therein and the number of bottles missing therefrom were as follows: Case No. 100 contained 2 bottles, missing 16 bottles; case No. 81 contained 6 bottles, missing 12 bottles; case No. 33 contained 2 bottles, missing 16 bottles; case No. 27 contained 8 bottles, missing 10 bottles; case No. 124 contained 2 bottles,

----
[1] Reported in T. D. 31943 (21 Treas. Dec., 364).

missing 16 bottles; case No. 114 contained 13 bottles, missing 5 bottles; case No. 149 contained 11 bottles, missing 7 bottles; total number missing, 82 bottles.

The shortages in cases Nos. 81, 100, 114, 124, and 149 were discovered on the day of delivery, and the shortages in cases Nos. 27 and 33 one week later. No customs officer was present when the discovery was made, and so far as the record discloses the collector received no notice of the fact that any of the merchandise was missing until the filing of the formal protests. On April 14, April 15, and June 6, 1908, the several entries were liquidated and duty assessed on the basis of 18 bottles to the case. The importers in due time protested that the missing bottles had not been imported and therefore claimed that they were not dutiable. The Board of General Appraisers sustained the protest and the Government appealed.

In support of its appeal the Government contends, first, that the nonimportation of the missing bottles not having been established by satisfactory evidence they must be considered as imported and therefore dutiable as assessed; second, that the missing merchandise is dutiable (a) because the deficiency not having been discovered as a result of an examination by the appraisers no allowance can be made therefor under the provisions of section 2921 of the Revised Statutes, (b) because the cases found without their full complement of bottles were opened by the importers in the absence of customs officers in violation of their bond and the conditions upon which delivery was made to them; third, that whatever might have been the number of bottles in the cases at the time of importation the goods should be assessed for duty on the basis of one dozen bottles to the case under the concluding proviso of paragraph 296 of the tariff act of 1897.

As to the first point, we are of opinion that upon the importers rested the burden of proving that the missing merchandise was not imported and never came within the tariff jurisdiction of the United States. The invoice and the entry of the goods raised the presumption that the goods in the quantities therein specified were actually imported, and to overcome that presumption it devolved on the importer to prove, at least *prima facie*, that the missing merchandise had never as a matter of fact arrived at the proper port of entry. (Merwin *v.* Magone, 70 Fed. Rep., 776, 777, 778.) The only evidence produced by the importers in that behalf was to the effect that after the arrival of the packages at the places of business of the owners an unofficial examination of some of the cases on the day of delivery and of others a week later disclosed that certain packages were short of their full complement of bottles. As this discovery was made after the packages were discharged from the vessel and after manual pos-

session of such packages had been surrendered by the customs officers it can not be considered as evidence showing that the missing bottles were removed from the cases prior to the arrival of the latter within the jurisdiction of the port.  The importers failed to make any proof that the cases released by the customhouse were preserved intact while in the possession of the drayman who delivered them or that they were so guarded and cared for that none of the bottles were or could have been removed therefrom while in transit or under his control.  Neither was any evidence introduced to show that all reasonable precautions were taken to prevent the abstraction of bottles from the packages after their arrival at the storeroom of the importers, or that the merchandise was so protected that its surreptitious withdrawal was impracticable.  For all that appears from the record some of the missing bottles may have been lost while in transit from the customhouse and others while the packages were in the hands of the owners.  To hold that invoiced and entered goods may be relieved from duty merely on proof of the fact that they were not found in the packages by the importers after they had acquired and the customs officers had lost possession thereof, unaccompanied by any evidence showing or tending to show that the missing merchandise was not lost in transit from the customhouse or withdrawn after deposit in the importers' storerooms, would, in our opinion, establish a precedent likely to lead to very serious abuses.

The importers did prove that they had presented a claim of loss to the steamship company for 52 of the bottles not received by them and that such claim had been allowed and paid.  Such an adjustment, even if it were competent evidence against the Government, which was not a party to it, falls far short of establishing that the merchandise for which the allowance was made was never imported and was lost, stolen, consumed, or destroyed before its arrival within the jurisdiction of its proper port of entry.  The liability of shipping companies as carriers of merchandise does not usually terminate on the arrival of the vessel in port, but continues until the cargo is discharged overside, and the settlement proved by the importers might just as well have attached to merchandise lost in port as to merchandise lost beyond its confines for aught that appears to the contrary.

No appeal seems to have been taken by the Government to this court from the decision of the board covering the package numbered 171, included in protest No. 334018, and covering the package numbered 114, included in protest No. 325510.  The decision of the board as to these two packages, therefore, can not now be questioned.

The point made in brief of counsel for the Government that no satisfactory evidence was adduced by the importers showing that the

bottles missing from the other cases were not imported seems to us to be well taken and to be covered by proper assignments of error. Holding this view of the case it is unnecessary for us to pass upon the other points raised.

The decision of the Board of General Appraisers is *reversed*.