UNITED STATES *v.* FENTON, JR. (No. 1276).[1]

SHORTAGE—EVIDENCE.

There was ample opportunity to establish the fact, if one, of a shortage in the importation here. But there is no evidence showing or tending even to show the condition of the case of goods at the precise time of importation. To protect the revenues, claims of this character should be clearly made out.—United States *v.* Brown (2 Ct. Cust. Appls., 189; T. D. 31493).

United States Court of Customs Appeals, February 27, 1914.

APPEAL from Board of United States General Appraisers, Abstract 33799 (T. D. 33789).

[Reversed.]

*William L. Wemple,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel; *Frank L. Lawrence,* special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This appeal is from a decision of the Board of General Appraisers sustaining a protest against the decision of the collector of customs at Cleveland, Ohio, for a shortage. The importation was one of decorated china lanterns and other goods intended for use in a hotel. It appears that the merchandise was duly entered and delivered into the possession of the importing firm. Upon opening the cases by the importers it is alleged there was discovered a shortage of one lantern in case No. 47. It appears from the record that the case was opened "immediately after delivery," as that was necessary in order to take care of the incoming freight. There is no

---

[1] Reported in T. D. 34252 (26 Treas. Dec., 416).

evidence in the record tracing the particular case from the custody of the collector to the time of its delivery to the importer and thereafter to the opening of the same. From aught that may appear from this record the case may have been opened while in the custody of the collector after the arrival of the shipment or while in the custody of the importer after delivery to him. There is not found any evidence showing or tending to show the condition of the case, whether or not it had been previously opened or any other evidence of the custody or condition of the case after importation which would seem to have been in the possession of or obtainable by the importer and within his ability to establish at the hearing. The hearing of the case before the Board of General Appraisers was seven months after the discovery of the alleged shortage. There was ample time therefore that communication could have been had with the exporting house or with the importing transportation company, and claim made for a shortage such as would be usual in the ordinary course of trade in such cases. The court, in United States v. Brown (2 Ct. Cust. Appls.; 189, 190, 191; T. D. 31943), a similar case, said:

* * * We are of the opinion that upon the importers rested the burden of proving that the missing merchandise was not imported and never came within the tariff jurisdiction of the United States. The invoice and the entry of the goods raised the presumption that the goods in the quantities therein specified were actually imported, and to overcome that presumption it devolved on the importer to prove, at least prima facie, that the missing merchandise had never as a matter of fact arrived at the proper port of entry. Merwin v. Magone (70 Fed., 776, 777, 778). The only evidence produced by the importers in that behalf was to the effect that after the arrival of the packages at the places of business of the owners an unofficial examination of some of the cases on the day of delivery and of others a week later disclosed that certain packages were short of their full complement of bottles. As this discovery was made after the packages were discharged from the vessel and after manual possession of such packages had been surrendered by the customs officers, it can not be considered as evidence showing that the missing bottles were removed from the cases prior to the arrival of the latter within the jurisdiction of the port. The importers failed to make any proof that the cases released by the customhouse were preserved intact while in the possession of the drayman who delivered them or that they were so guarded and cared for that none of the bottles were or could have been removed therefrom while in transit or under his control. Neither was any evidence introduced to show that all reasonable precautions were taken to prevent the abstraction of bottles from the packages after their arrival at the storeroom of the importers or that the merchandise was so protected that its surreptitious withdrawal was impracticable. For all that appears from the record some of the missing bottles may have been lost while in transit from the customhouse and others while the packages were in the hands of the owners. To hold that invoiced and entered goods may be relieved from duty merely on proof of the fact that they were not found in the packages by the importers after they had acquired and the customs officers had lost possession thereof, unaccompanied by any evidence showing or tending to show that the missing merchandise was not lost in transit from the customhouse or withdrawn after deposit in the importers' storerooms, would, in our opinion, establish a precedent likely to lead to very serious abuses.

While the Board of General Appraisers found that the evidence of the loss was sufficient in this case it is obvious that the law as applied to the facts in the Brown case, if applied to the facts in this case, would have resulted in a contrary decision of the board. Conceding all the evidence adduced to be true, the law of the case as applied, as well as the evidentiary fact sought to be established, is at variance with the said decision of this court. While it may be regrettable that relief can not be had in such cases, it is nevertheless necessary, in the interests of the collection of the revenues of the Government, that claims of this character should be clearly established—at least all possible avenues of loss should be excluded by testimony where, as in this case, ample opportunity is afforded.

*Reversed.*