MEADOWS, WYE & Co. *v.* UNITED STATES (No. 2248).[1]

1. DUTIES ACCRUE ON CROSSING CUSTOMS LINE—HOW DETERMINED—EVIDENCE.

Although, under the hard and fast principles of substantive law, duties accrue upon imported merchandise at the exact moment it crosses the line within the customs district, the whole framework of customs administrative law and regulation was constructed upon the principle that, while the duties so accrue, the amount of the merchandise, its condition, etc., at that time would be ascertained by subsequent weighing, gauging, appraising, etc., since to ascertain these things at the precise moment of crossing the line, is a physical impossibility.

2. EVIDENCE, SUFFICIENCY—CREDIBILITY OF WITNESSES.

Where the judgment of the Board of United States General Appraisers was predicated upon the theory that the evidence was *insufficient*, there is no application of the familiar rule that the trial court is a better judge than the appellate court of the *credibility* of witnesses.

3. SHORTAGE—EVIDENCE, BURDEN OF PROOF.

The burden is on the claimant to show that the missing merchandise was not imported and that the shortage occurred before landing.

4. EVIDENCE OF SHORTAGE.

Where discharging inspectors took a list of the contents of some of a number of boxes of imported merchandise, and a comparison of that list with the invoice shows a deficiency, a prima facie showing is made of shortage and its pro tanto extent; and such shortage is referred back to the time the importation crossed the customs line. This, added to credible testimony that some

[1] T. D. 40583.

of the merchandise was in bad order on board the steamship, that a check up after landing showed a certain claimed shortage, and that the merchandise was continuously in the custody of witnesses who testified that it was not tampered with, was sufficient to establish the claim, and it should have been allowed.

## United States Court of Customs Appeals, December 17, 1924

APPEAL from Board of United States General Appraisers, Abstract 45591

[Reversed.]

*William L. Wemple* for appellants.
*William W. Hoppin,* Assistant Attorney General (*A. H. Goodman* and *Pelham St. George Bissell,* special attorneys, of counsel), for the United States.

[Oral argument Apr. 10, 1924, by Mr. Wemple and Mr. Goodman]

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BARBER, Judge, delivered the opinion of the court:

About the 23d day of October, 1920, the importers, acting for the United Cigar Co., made an entry, accompanied by the consular invoice, at the port of New York, of eight large boxes or cases of smokers' articles. The merchandise was brought here on the S. S. *Manchuria.*

According to the invoice, these boxes contained, among other things, numerous small cartons or cases inclosing in turn small smokers' articles, a detailed list of which was in the invoice.

At the time the merchandise was unladen the discharging inspectors, customs officers, found four of these large boxes in bad order, examined the contents thereof, and took a list of the same, which was duly forwarded to the collector. This list stated the number of small cases which were filled and then in each of the large boxes, without stating in detail what the contents thereof were, and also listed certain other small cases and the contents thereof, but did not show whether or not these cases were full or what merchandise, if any, was missing from the large boxes, respectively. Presumably this failure to state the shortage was because the inspectors did not have the detailed invoice or did not have time to carefully check the same with the actual contents of the boxes.

In liquidating the entry the collector proceeded upon the theory that inasmuch as none of the boxes, on account of which shortage was claimed, had come under the examination of the appraising officer, and because the discharging inspectors' report as to the contents found by them in four of the boxes was indefinite, he was justified in assessing and he did assess duty upon the contents of the boxes as shown by the invoice accompanying the entry.

The boxes so examined by the discharging inspectors were numbered, respectively, 1391, 1464, 1465, and 1466.

The importers protested the liquidation, claiming there was a shortage in each of the above boxes and in another box numbered 1467, setting forth in their protest a list of the articles claimed to have been missing from each thereof.

The Board of General Appraisers overruled the protest.

The hearing before the board was on September 28, 1922.

The Government called no witnesses.

The precise date on which the importation was unladen does not appear, but the evidence clearly tends to show that it was all accomplished within a few days after entry. None of the boxes concerning which shortage was claimed was sent to the Government stores for examination. It appeared that they remained on the pier where they were unladen longer than usual in such cases because there was a dispute or an investigation as to their contents.

It probably would not be possible to determine the shortage, if any, by comparing the invoice with the discharging inspectors' report, but it could, of course, be ascertained by checking the actual contents of the boxes with the invoice.

At the time this importation was made the customs regulations of 1915 were in force. Article 608 thereof provides that allowances shall be made in the liquidation of duties for deficiencies in packages found by the appraiser or other customs officer and so certified to the collector, provided the collector is satisfied that the missing articles were not included in the importation.

At the hearing before the board, Stannard, a delivery clerk in the employ of the steamship company, testified that about six hours after the discharging of the cargo was begun he saw one of these large boxes, the head of which was then smashed in, in No. 2 lower hold of the vessel; that he examined and listed the contents of this box after it was removed to the dock and gave a copy of such list to a customs inspector. What became of the list does not appear. He also testified that the merchandise while on the ship and on the pier was under guard by a detective agency under his supervision and control; that he did not think it was tampered with while so under guard, because if it had been the fact would have been reported to him.

Witness La Mont testified that in November, 1920, he and a dock checker, who was not a customs officer, checked up with the invoice and made a list of the contents missing from boxes 1464 and 1466 on the pier where they were unladen, at which time the other boxes were not on the pier; that on the 10th day of November, with a representative of the warehouse, he checked up with the invoice and made a list of the contents missing from boxes 1391 and 1467 at

a private warehouse to which they had been removed; that at the same warehouse, on a date not definitely stated in his oral testimony, he also checked the contents of box 1465 with the invoice and made a list of the goods missing therefrom, and that all these boxes claimed to be short showed evidences of having been tampered with.

In connection with La Mont's testimony Exhibits 1, 2, and 4 were introduced in evidence. They contain a list of the articles found by him to be missing from each box and are in the form of a claim for loss, apparently made to the traffic department of the Manchuria line. All are dated December 1, 1920, and contain statements that boxes 1391, 1465, and 1467 were examined November 10 and boxes 1464 and 1466 November 9, 1920.

This witness also testified that he checked up the contents of another box with the invoice and found no shortage therein except one pipe, which was held as a sample by customs house officers, concerning which no shortage is claimed.

The storekeeper of the warehouse, refreshing his recollection by a customary record kept there which showed the number of the boxes but not the name of the delivering truckman, testified that boxes 1391, 1455, and 1465 were delivered to the warehouse October 29, 1920; that on or about the same day or about November 10, 1920, boxes 1463 and 1467 were likewise delivered; that while there they were all under guard and not tampered with, so far as he knew, and that the boxes were examined there by an employee of the United Cigar Co.

No shortage is claimed in boxes 1455 and 1463.

One truckman gave testimony that in 1920, the precise date he could not then state, he conveyed two cases for the United Cigar Co. from the pier where this shipment was unladen to the private warehouse in question. He could not identify any of the particular cases here involved, but said that those he did transport were not tampered with while under his care.

Another truckman testified, refreshing his recollection from a written statement theretofore made by him, that on the 29th day of October, 1920, he took three cases for the cigar company from the same pier to the same warehouse; that two of these looked as if they had been tampered with, "the straps were broken and the boards was loose;" that he accepted them in a recoopered condition; that they were not tampered with in any way while in his care. He did not give the number of any case.

Another witness testified that he went to the same pier in 1920, the precise date he could not remember, to examine merchandise for the United Cigar Co., which had arrived on the *Manchuria* and saw there three cases. They had not been then passed by the customs inspectors. One was in bad condition, and another one looked as

if the straps had been broken and nailed back again. He did not identify any particular case by number.

The case, therefore, reduces itself to the question of whether we shall sustain the judgment of the board or reverse it upon the ground that it is not supported by the fair weight of the evidence.

In considering this question, it may be noted that both the importer and the Government cite and rely upon United States v. Brown (2 Ct. Cust. Appls. 189; T. D. 31943); United States v. Fenton (5 Ct. Cust. Appls. 173; T. D. 34252).

In the Brown case it appeared that after the merchandise was received by the importers an alleged shortage was discovered by them and no knowledge thereof brought home to the collector until the filing of the protest. We held, in substance, that there was a presumption arising from the invoice and entry that the goods were actually imported, that it devolved upon the importers to prove at least prima facie, that the missing merchandise did not arrive at the port of entry, and pointed out that inasmuch as the discovery that there was merchandise missing from the importation was not made until after the manual possession of the packages claimed to be short had been surrendered to importers, and the importers had failed to make any proof that after such release the packages were kept intact until after examination, they had failed to sustain the burden cast upon them by law. And that was in substance the view adopted in the Fenton case.

In the case at bar, however, as already appears, there has been undisputed evidence introduced tending to show that one of the boxes was found in the lower hold of the vessel with its head smashed in; that four, presumably including the one last mentioned, were in such condition as prompted the discharging inspectors to make a list of their contents; that two of the boxes were examined on the dock and checked up with the invoice while in customs custody, and before being delivered to importers, while three were likewise checked up therewith in a private warehouse soon after delivery had been made, and that whether on the pier or in the warehouse they were under guard.

There is no testimony tending to impeach the conclusion that *when examined* by him the contents of these boxes were short to the extent shown by La Mont's lists thereof, and it is not claimed that such shortage did not, in fact, exist at that time.

The Government makes but two contentions:

1. That the burden of proof is upon the importers to show that the missing merchandise was not imported.

2. That the importers have failed to prove that the claimed shortage occurred before landing.

In support of the latter, it argues that the evidence fails to establish whether the missing merchandise was abstracted from the boxes before or after landing; and therefore must be presumed to have been imported.

We agree with the Government that the burden of proof is upon the importers to show that the missing merchandise was not imported, and it is also for them to prove that the claimed shortage occurred before landing.

The Government strenuously argues that the finding of the board should not be reversed because of the rule, often referred to by this court, that the triers of the fact who see and hear the witnesses are better judges than an appellate court of their intelligence and credibility, and that hence we should be slow to reverse their finding here. In this case, however, there is but little room for the application of that rule. There is no controverted question of fact so far as the evidence is concerned. The board does not suggest a doubt as to the credibility of the witnesses, but has proceeded upon the theory that, assuming the testimony to be true, it does not sufficiently establish a shortage.

We think, however, that the Government and the board overlook, or do not give sufficient weight to, the fact that four of these boxes were in such condition when they were unladen as to cause the discharging inspectors to take a list of their contents. That act, and the list they took when compared with the invoice, raises a strong presumption that some shortage existed at that time. No reason can be imagined and none is suggested why the inspectors undertook to list their contents unless they then thought there was a shortage therein. It will not be presumed that they would undertake to break open sound boxes. Such was not their duty. The fact that they did not make such a list of the contents as of itself would enable the collector to determine therefrom the shortage, can not militate against the importers. If they had definitely stated the shortage in their report to the collector, presumably he would have allowed it under the customs regulation heretofore mentioned. What the shortage in fact was, the testimony of the witnesses discloses. Who can, on the evidence, reasonably doubt that whatever was missing from the four boxes examined by the inspectors was missing therefrom when the boxes were unladen? As to those examined by La Mont on the pier, there can be little, if any, doubt. As to those examined at the warehouse it is safe, at least, to say that the importers have made a prima facie case of shortage therein.

Possibly, although the claim is not made in argument, a different view might be adopted as to box 1467, because the discharging inspectors do not appear to have observed it to be in bad condition,

It was, however, part and parcel of the same importation, treated, handled, and its contents checked up in the same manner as the other boxes, and we think the importer has established prima facie, at least, the shortage as to that particular box.

On the whole record we are unable to come to any conclusion other than that the evidence fairly establishes prima facie, at least, that at the time the merchandise was unladen it was short, as claimed by the importers.

Assuming, therefore, that when the shipment was unladen such shortage existed, there remains for consideration the question of whether importers have, by a fair balance of the testimony, shown that the missing articles were not actually imported—that is, that they did not cross the customs line. We have no difficulty in determining that issue. In United States v. Shallus (2 Ct. Cust. Appls. 332; T. D. 32074) it was pointed out that although under the hard and fast principles of substantive law, duties accrue upon imported merchandise at the exact moment it crosses the line within the customs district, the whole framework of customs administrative law and regulation was constructed upon the principle that while the duties so accrued, the amount of merchandise which was imported, its condition, etc., would, as of the time it crosses the customs line, be ascertained by subsequent weighing, gauging, appraising, etc., and that it would be physically impossible to otherwise ascertain its dutiable status. See also United States v. Lippmann (11 Ct. Cust. Appls. 336; T. D. 39145).

Applying that principle to this case we are clear it must be held, nothing to the contrary herein appearing, that the invoiced contents of the boxes in this case were, when they crossed the customs line, short to the same extent as when unladen.

Exhibit 5 is a list of the missing articles upon which duty was assessed. The collector should reliquidate, allowing such shortage.

The judgment of the Board of General Appraisers is, therefore, *reversed*.