(C. D. 1420)

ABOUCHAR & Co., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided May 20, 1952)

*Strauss & Hedges* (*Barnes, Richardson & Colburn* by *Edward N. Glad* of counsel) for the plaintiff.

*Charles J. Wagner*, Acting Assistant Attorney General, (*William J. Vitale*, special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges; CLINE, J., not participating

JOHNSON, Judge: This action involves the duty assessed upon certain Madeira linen embroidered articles. The plaintiff claims that the linen embroidered articles as set out in the affidavit of short shipment were not imported and that duty should not have been assessed thereon.

At the trial it was established that the regulations governing the short shipment of articles were complied with and the affidavits required by the regulations were admitted in evidence as collective exhibit 1 for the purpose of showing such compliance.

The president of the plaintiff company testified that he personally checked the contents of the case in question upon delivery to his place of business. He found that the case before opening was in good condition and did not look as though it had been tampered with, as it had steel strappings around it which were not cut and seemed unchanged,

but when he made an inventory of the contents, he found that there were such shortages as were noted in the affidavit of short shipment. The witness read the list of missing articles and testified that he did not receive these articles in any other shipment. He further testified that he had personally known for 15 or 20 years the trucker who delivered the merchandise and who was in the employ of his customs broker; that he contacted the trucker and obtained an affidavit from him, which is a part of collective exhibit 1. Unfortunately, the truckman was deceased at the time of the trial. The witness was unable to remember whether or not he had written the shipper concerning the shortage.

From the entry papers it appears that the shipment consisted of two cases. One was sent to the appraiser's stores and there examined. Although the case was received by the customs authorities for examination in apparent good order, the cartons contained therein were found to be torn, the covers of boxes switched, and certain articles missing. The two cases were landed in the United States at the port of Philadelphia and transshipped in bond via the Pyramid Motor Freight, Inc., to New York. The trucker received and transported the case in question from the Pyramid Motor Freight, Inc., to the place of business of the importer.

Counsel for the plaintiff contends that the testimony amply establishes as a fact that the missing articles were no more a part of the importation in question than the articles found missing by the examiner in the case examined in the appraiser's stores, and following the case of *Meadows, Wye & Co.* v. *United States*, 12 Ct. Cust. Appls. 396, T. D. 40583, no duty should have been assessed thereon.

Counsel for the Government contends that the evidence is insufficient to establish that the articles now reported missing were not in fact landed in the United States, and the presumption of correctness attaching to the collector's action has not been overcome.

In the *Meadows, Wye* case, *supra*, the court noted that four of the boxes from which merchandise was claimed missing were in such condition when unladen as to cause the discharging inspectors to take a list of their contents. "That act, and the list they took when compared with the invoice, raises a strong presumption that some shortage existed at that time." The court found that there was little doubt of the shortage from the cases examined on the pier, and as to the cases examined at the warehouse, the court was of the opinion that the importer had made a *prima facie* case of shortage. As to one of the cases which did not appear to have been reported to be in bad order, the court stated:

\* \* \* It was, however, part and parcel of the same importation, treated, handled, and its contents checked up in the same manner as the other boxes, and we think the importer has established prima facie, at least, the shortage as to that particular box.

The situation in that case is entirely different from that which confronts the court in the case at bar. Here, there were two cases, both in apparent good order. One of the bonded cases was sent to the appraiser's stores and shortages were found by the examiner, the duties upon which shortages, under the law, are required to be allowed by the collector under section 499, Tariff Act of 1930, as amended. The other one was delivered to the importer without examination.

In the case of *United States* v. *Brown et al.*, 2 Ct. Cust. Appls. 189, T. D. 31943, after merchandise was received by the importers, an alleged shortage was discovered by them. The court stated that there was a presumption arising from the invoice and entry that the goods were actually imported, and it devolved upon the importers to prove, at least *prima facie*, that the missing merchandise did not arrive at the port of entry. It was pointed out by the court that inasmuch as the discovery that there was merchandise missing from the importation was not made until after the manual possession of the packages claimed to be short had been surrendered to the importers, and the importers had failed to make any proof that after such release the packages were kept intact until after examination, they had failed to sustain the burden cast upon them by law.

In that case, the court stated that evidence to the effect that packages were opened upon arrival at the importers' place of business and found short is insufficient to establish that the missing articles were removed from the cases prior to the arrival of the latter within the jurisdiction of the port. The reason for such holding was that there was no proof that the cases released from the customs were preserved intact while in the possession of the drayman who delivered them or that they were so guarded and cared for that none of the contents could have been removed therefrom while in transit or under his control, and also because there was no evidence to show that all reasonable precautions were taken to prevent the abstraction of the articles from the packages after their arrival at the storeroom of the importers.

In the case of *United States* v. *Robinson*, 20 Ct. Cust. Appls. 222, T. D. 46036, the shortage in question involved wool goods not found in a case opened in the importer's office. The case was supposed to contain nine pieces, but only six pieces were contained therein. As soon as the discovery was made, a marine surveyor and cargo surveyor made an examination of the case. Such examination disclosed that the ends of two boards on one side of the case had apparently been raised and replaced, and that there was a vacant space in the case which had been filled with waste burlap and brown paper. This court sustained the claim of shortage for the reason that the importer submitted the evidence of the truckman taking the case

from the dock, of the bookkeeper receiving the case and protecting same at the importer's place of business, as well as the testimony of the findings of the marine surveyor. Upon appeal, the appellate court held such evidence insufficient to establish that the goods were not landed in the United States. The court stated:

The case must be decided upon the evidence in the record heretofore outlined. The burden was upon the protestant to prove, at least by a preponderance of the evidence, that the missing goods were not imported. Unless it has done this, its protest can not be sustained. In order to establish nonimportation, it is essential that the record show with reasonable certainty that case No. 121 was in the same condition when the shortage was discovered as it was when it entered the jurisdictional limits of the United States.

In the case of *The Glemby Company, Inc.* v. *United States*, 24 Cust. Ct. 461, Abstract 54328, it was claimed that certain hair nets were short landed from an unexamined case. The truck driver testified that he received the case from the warehouse in very good condition and delivered it directly to the plaintiff's warehouse. An employee of the plaintiff testified that the case was opened in his presence and he found 16 boxes of hair nets missing, 4 of which were in a banged-up condition, and the missing hair nets had never been received by plaintiff. The court stated that the witnesses had failed to trace the case there in question from the time it was discharged from the vessel and the permit of delivery accepted by the customs authorities until it reached the place of business of the importer, and noted that the truck driver carried the goods from a warehouse to the importer's place of business, and that the driver who picked the case up at the pier and took it to the warehouse did not testify. The court found such testimony insufficient to overcome the presumption of correctness of the collector's action in assessing duty upon the articles.

In the case before us, the evidence is not as strong as in the *Glemby* case, *supra*. All we have is the evidence of the plaintiff that the merchandise was not in the case, although it was found to be in good order with no evidence of tampering. We are constrained, therefore, to enter judgment in favor of the Government.