(C. D. 1636)

CHARLES HAPPEL, INC. *v.* UNITED STATES

United States Customs Court, Third Division

 (Decided July 22, 1954)

*Jordan & Klingaman* (*Jacob L. Klingaman* of counsel) for the plaintiff.

*Warren E. Burger*, Assistant Attorney General (*William J. Vitale*, trial attorney), for the defendant.

Before Ekwall and Johnson, Judges

Johnson, Judge: The merchandise involved in this case consists of surgical scissors and nail nippers, imported from Germany on or about September 12, 1951. The plaintiff claims that the collector failed to make an allowance in duties because of a shortage in case No. CR/M2.

The collector's letter of transmittal indicates that affidavits of short shipment were not filed, as required by customs regulations. It has been held, however, that the issue in shortage cases is not whether there was a compliance with customs regulations, but whether there was, in fact, a nonimportation. *United States* v. *Browne Vintners Co., Inc.*, 34 C. C. P. A. (Customs) 112, C. A. D. 351.

In order to establish that a shortage existed at the time of importation, plaintiff introduced the testimony of Robert W. Steinmetz, vice president of Monarch Cutlery Manufacturing Co., Inc., the ultimate consignee, and an inspector's report on customs Form 3088 (plaintiff's exhibit 1).

According to the invoice herein, case No. CR/M2 contained the following merchandise:

| 50 dozen | Surgical scissors |
|---|---|
| 62⅓ " | Nail nippers |
| 6 " | Cuticle nippers |
| 31⅔ " | Tweezers |
| 60 " | Cuticle pushers |
| 2 " | Hair scissors |

An inspector's report on the back of the consumption entry permit and the report on customs Form 3088 (plaintiff's exhibit 1) state that case No. CR/M2 was landed in bad order, with a board broken, and contained 189 packages, cord tied, and 3 boxes.

Mr. Steinmetz testified that he examined case No. CR/M2 when it arrived at the consignee's place of business and found that it had a broken board which had been nailed on again but not in the same nail holes as were originally in the case.. He stated that, as compared with the invoice, there were missing 24 dozen surgical scissors, 12½ dozen pedicure nippers, and one-half dozen hair scissors. The merchandise in the shipment was wrapped in small packages, tied with cord, most of them containing half a dozen scissors to a package.

He counted the packages but did not recall whether there were 189 or not, or whether there were 3 boxes in addition.

Plaintiff contends, first, that under the circumstances of this case the collector was required to grant relief pursuant to the provision in section 499 of the Tariff Act of 1930, as amended, which reads as follows:

* * * If a deficiency is found in quantity, weight, or measure in the examination of any package, report thereof shall be made to the collector, who shall make allowance therefor in the liquidation of duties.

It appears from the official papers that case No. CR/M1 was designated by the collector for examination, and there is no evidence that case No. CR/M2 was so designated or examined. Since the authority to make allowances provided for in section 499, *supra*, is limited to deficiencies in packages actually examined, said section has no application in the instant case.

Plaintiff also relies upon *Syndicate Trading Co.* v. *United States*, 57 Treas. Dec. 560, T. D. 43962, and *Meadows, Wye & Co.* v. *United States*, 12 Ct. Cust. Appls. 396, T. D. 40583.

In the case first cited, the report of the discharging inspector stated that the imported package contained 48½ dozen articles instead of 58 dozen, as invoiced, and the court held that where an inspector examines and lists the contents of a package and a comparison of his list with the invoice indicates a deficiency, a *prima facie* showing of shortage is made. However, the court also pointed out that the situation is different where the report lists certain cases as "not found" or "not landed," and that such reports, being negative in character, have little probative value.

In *Meadows, Wye & Co.* v. *United States, supra*, the discharging inspectors found four boxes in bad order and listed their contents. The court stated that while it would probably not be possible to determine the shortage by comparing the invoice with the discharging inspectors' reports, the fact that a list was made raised a presumption that a shortage existed, and the testimony of the witnesses disclosed what the shortage was.

In the instant case, the report of the discharging inspector indicates that the case was in bad order, but a comparison of the statement that it contained 189 packages and 3 boxes with the items listed on the invoice does not show whether or not there was a shortage. The witness Steinmetz testified that the merchandise received by him was less than that listed on the invoice, but he was unable to state whether or not he received 189 packages and 3 boxes.

It has been held that in order to establish shortage in an unexamined package, it is necessary for the importer to prove that no one had an opportunity to tamper with the case from the time it left customs

custody until it was opened by the importer. *Raymond & Heller* v. *United States*, 66 Treas. Dec. 574, T. D. 47360; *The Glemby Company, Inc.* v. *United States*, 24 Cust. Ct. 461, Abstract 54328; *Abouchar & Co., Inc.* v. *United States*, 28 Cust. Ct. 265, C. D. 1420. In the instant case, Mr. Steinmetz stated that the package was delivered by railway express, but there is nothing to show whether that company had charge of it during the entire time after it left customs custody, or whether it could have been tampered with in transit.

While there is no doubt from the testimony given by Mr. Steinmetz that there was a shortage of the invoiced quantity of the merchandise upon arrival at the consignee's place of business, the proof is insufficient to establish what amount, if any, was never landed in the United States. We are constrained, therefore, to render judgment in favor of the Government.