(C. D. 1659)

AMITY SILK CORPORATION *v.* UNITED STATES

United States Customs Court, Third Division

(Decided November 18, 1954)

*Brooks & Brooks* (*Thomas J. McKenna* of counsel) for the plaintiff.
*Warren E. Burger*, Assistant Attorney General (*William J. Vitale*, trial attorney), for the defendant.

Before EKWALL and JOHNSON, Judges

JOHNSON, Judge: The merchandise involved in these cases, consolidated at the trial, was assessed with duty at 25 cents per square yard under paragraph 909 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, and at 5 cents per pound under paragraph 924, as modified, as twill-back velveteen, containing cotton having a staple of over one and one-eighth inches in length. It is claimed that duty was assessed under paragraph 909, as modified, upon a greater yardage than that actually received and that the merchandise was not subject to the additional duty under paragraph 924, as modified, since it was made with cotton having a staple of less than one and one-eighth inches in length.

The pertinent provisions of the tariff act, as modified, are as follows:

| Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 909 | Pile fabrics (not including pile ribbons), cut or uncut, whether or not the pile covers the entire surface, wholly or in chief value of cotton:<br>    Twill-back velveteens_____ | 25¢ per sq. yd., but not less than 25% nor more than 44% ad val. |
| * | * * * * * | * |
| 924 | All the articles enumerated or described in Schedule 9 (except in paragraph 922), Tariff Act of 1930, shall be subject to an additional duty on the cotton contained therein having a staple of one and one-eighth inches or more in length of_____ | 5¢ per lb., * * * |

At the trial, it was stipulated by counsel that the cotton in the involved articles had a staple of less than one and one-eighth inches and that the additional duty of 5 cents per pound should not have been assessed.

It was also agreed by counsel that the memoranda of the collector attached to the respective protests be considered as part of the record.

According to these memoranda, duty under paragraph 909, as modified, was assessed on the basis of the invoiced and entered yardage, which totaled 24,398 yards. Plaintiff claims that actual measurement indicated a yardage of 21,085 yards.

In support of its contention, plaintiff called James L. Richter, president of the company. He testified that he purchased the merchandise on the pound basis, but he did not weigh the goods on their arrival here because they were resold on a yardage basis. He stated that, as the merchandise was sold, a case would be called in from bond and the pieces measured under his supervision. All of the cases were examined within 6 months of importation. The goods consisted of mill ends, ranging from 1 yard to 5 yards in length, 90 per centum measuring about 3 yards.

The witness stated that a memorandum of the actual yardage was made as each case was opened and the merchandise measured. A tabulation made under his supervision was received in evidence as plaintiff's collective illustrative exhibit 1. It is headed:

SHIPMENTS OF MILL ENDS FROM COTONIFICIO CANTONI COVERED BY ENTRY #904671, CASES 817–49 "ITALIA" AND ENTRY #707263, CASES 885–90 "EXOCHORDA"—1951

Under the subheadings "Date," "Account," "Invoice #," and "Yardage Amount," entries of various dates from August 1 through November 6, inclusive, are listed. The invoice numbers do not refer to the consular invoice numbers herein, and, except for the heading, there is nothing to connect the tabulation with the imported merchandise. The yardage for the "Total Shipment" is given as 21,085 yards, which the witness stated was the total contained in all the cases.

The witness said that he did not examine the cases before they left customs custody, but he stated that he suspected from the very beginning that there was something wrong because every case was invoiced at the same poundage. He explained that he had never had any such singular coincidence where 25 cases had the same poundage exactly to the ounce and that it would be almost physically impossible to do it. He stated that when he opened the cases they were intact and added:

The cases were just in the same condition as it was shipped, all iron-strapped and metal-bound, and there was absolutely no difference from the time that they were loaded on the boat until they came into our place. There was no tampering, if that is the question that you mean.

The witness also stated that the merchandise was delivered from customs custody to bonded warehouse and from there to his place of business "by the bonded truck, Fortunato, who has done all our work for the past 6 years." However, the truckman was not called upon to testify.

In view of the concession in regard to the duty assessed under paragraph 924, as modified, the only question before us concerns the claim that duty was levied upon a greater quantity of goods than that actually received by the importer.

The principle applicable to this case is that the weight or quantity of merchandise actually imported must' be taken as the basis for determining duties, irrespective of the quantity or weight given in the invoice. *Marriott* v. *Brune*, 50 U. S.. 619; *Gertzen & Co.* v. *United States*, 12 Ct. Cust. Appls. 499, T. D. 40697. However, it is presumed that the invoiced and entered quantities were actually imported, and the burden rests upon the importer to prove that the missing merchandise never, as a matter of fact, arrived at a port of entry in the United States. *United States* v. *Brown*, 2 Ct. Cust. Appls. 189, T. D. 31943. The record must show with reasonable certainty that the cases of merchandise were in the same condition when the shortage was discovered as they were when they entered the jurisdictional limits of the country and that no one had an opportunity to tamper with them from the time they left customs custody until they were opened by the importer. *United States* v. *H. W. Robinson & Co.*, 20 C. C. P. A. (Customs) 222, T. D. 46036; *Raymond & Heller* v. *United States*, 66 Treas. Dec. 574, T. D. 47360; *The Glemby Company, Inc.* v. *United States*, 24 Cust. Ct. 461, Abstract 54328; *Abouchar & Co., Inc.* v. *United States*, 28 Cust. Ct. 265, C. D. 1420.

Applying these principles to the instant case, we find that the record shows only that when the importer had the merchandise measured some time after it left customs custody and had been delivered to plaintiff's place of business, it was found that the invoiced and entered quantities were greater than that actually received. The witness Richter expressed the opinion that there was no tampering with the cases and that they arrived in their original ironbound condition. However, no attempt was made to trace the cases from the time they were released from customs custody until they reached the importer's place of business. Whether or not anyone had an opportunity to tamper with them during that period has not been established.

The proof in the instant case is similar to that held insufficient in *Abouchar & Co., Inc.* v. *United States, supra*. There, the president of the plaintiff company testified that he personally checked the contents of the case upon delivery to his place of business; that he found the case in good condition; and that it "did not look as though it had been tampered with, as it had steel strappings around it which were not cut and seemed unchanged." Nevertheless, shortages were found when the case was opened. The witness testified that he had known the truckdriver, who delivered the merchandise, 15 or 20

years and had obtained an affidavit from him. Unfortunately, the man was deceased at the time of the trial. The court overruled the protest, stating (p. 268):

\* \* \* All we have is the evidence of the plaintiff that the merchandise was not in the case, although it was found to be in good order with no evidence of tampering.

While the evidence in the instant case indicates that there was a shortage of the invoiced quantity upon arrival at the importer's place of business, the proof is insufficient to establish that the missing yardage was never landed in the United States.

On the record presented, the protests are sustained as to the claim that the merchandise is not subject to duty at 5 cents per pound under paragraph 924 of the Tariff Act of 1930, as modified, and overruled as to the claim that duty was assessed upon a greater quantity than that imported into the United States. Judgment will be rendered accordingly.